**Lillian McCullough BERGHANE,**
**Appellant,**

**v.**

**RADIO CORPORATION OF AMERICA.**

**No. 11245.**

United States Court of Appeals
Third Circuit.

Argued June 8, 1954.

Decided Dec. 13, 1954.

William H. Parmelee, Pittsburgh, Pa. (Christy, Parmelee & Strickland, Pittsburgh, Pa., Howard Duane, Wilmington, Del., on the brief), for appellant.

Stephen H. Philbin, New York City (William S. Potter, Wilmington, Del., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

BIGGS, Chief Judge.

Four patents issued to McCullough are before us on this appeal. Berghane alleged that RCA has infringed them. The court below found the claims of the patents involved to be invalid. See 116 F. Supp. 200. Lillian McCullough Berghane, presently co-owner of the patents with members of her family, has appealed.

The first patent is No. 1,615,093, issued January 18, 1927, for a "High Vacuum Space Discharge Device and Gas Accumulator Therefor." Claim 1 is in issue.[1] The disclosure is for a "getter",[2] "such as oxides of various kinds, or pure willow charcoal."[3] The court below found, Finding of Fact 6(e), that claim 1 was invalid because inoperative: "Charcoal on highly heated anodes in high vacuum radio tubes will not usefully absorb gases released during the operation of the tube (nor will oxides)." The court also found, Finding of Fact 6(f), that there was a "want of patentable invention, because charcoal was known as a material which would absorb gases under certain conditions and it would not require more than the expected skill of the art to use it for that purpose on tube anodes, * * *." There was evidence indicating that other "getter" materials for absorption of gases had long been known to the art. We cite as an example the Sutherlin Patent No. 1,740,481, the application for which was filed seven months before that of the patent in issue. The fact that charcoal has absorbent qualities and will function as a cleaner or "getter" in a tube was also known. See the Claude Patent No. 1,189,664 and the article by Sir James Dewar, "Gas Absorption by Charcoal", Encyclopaedia Britannica, 11th ed., Vol. XVI, at p. 751, and the article by William Thomas, "The Adsorption of Gases", Encyclopaedia Britannica, Vol. I, p. 182, 1948 ed. The Holst Patent No. 1,485,505, disclosed that such "getters" might be imposed on part of a plate of a tube. Both findings of the court below have full support in the record and are indubitably correct.

It is also clear that RCA's accused tube does not infringe claim 1. Claim 1 is a combination claim for a structure. It claims as an essential element in that structure a coating of charcoal on one surface of the anode. RCA's tubes do not employ charcoal.

The next patent is No. 1,991,767 for a "Thermionic Tube", issued February 19, 1935. Claim 3 is in issue. The disclosure referred to in the specification and in claim 3 is of "a ceramic supporting body at each end of the envelope" and a "fused ceramic sealing material" to form a seal between the external metal envelope of the tube and the supporting members at each end of it, and the anode, cathode, and grid electrodes.[4]

1. As follows: "A vacuum tube having an anode and a cathode, and a coating of charcoal on the entire part of that surface of the anode directed away from the cathode."

2. A "getter": i.e., something which *gets* gas out of a vacuum tube.

3. The vacuum tube is heated and pumped out to evacuate the gas, which, in the case of the radio vacuum tube, is air, largely comprised of oxygen and nitrogen.

   McCullough's disclosure according to his specification was as follows: "The oxide or accumulating substance, which is generally of a porous nature as compared with the metal of the anode, is, of course, applied to the anode before the tube is assembled. When the tube is pumped, the parts are heated far above the normal operating temperature for the tube, in the usual manner to de-gassify the metals as much as possible. When the tube is tipped off, the remaining gas in the tube, not lodged on the envelope, will be attracted by the coating on the plate. The coating, it has been found, will retain the gas even when the temperature of the anode is subsequently raised to the melting point.

   "Inasmuch as the coating, furthermore, is applied directly to the element of the tube which gives off the destructive gases during operation, and about which manifestations of gaseous conditions is normally first apparent, it will be seen that the coating will trap the hot gas particles and prevent them from being propelled against the interior of the envelope and strike the film of gas which is lodged upon the cooler surfaces, consequently preventing the loosening of other particles which, under continued conditions of overheat, would otherwise break down the vacuum of the tube."

4. Claim 3 is as follows: "A thermionic tube comprising a metal external envelope, a ceramic supporting body at each end of the envelope, a fused ceramic sealing material forming a seal between said metal body and said supporting members at each end of the tube, anode,

■ McCullough's disclosure is invalid over the prior art for want of patentable invention. We refer to the Stoekle Patent No. 1,353,976 and the Housekeeper Patent No. 1,583,463, demonstrating that the use of ceramic discs to support electrodes was old, and to the Gray Patent No. 1,269,534, showing that the use of a sealing material for electrode supports was well known. Compare the Simonds Patent No. 1,740,-375, relating to the connection of tube circuits to the ground.

■ RCA's accused tube does not make use of any "ceramic" supporting body or sealing material. RCA's tube does have a supporting body of mica but that is not a ceramic. The claim therefore has not been infringed.

■ We will deal now with Patent No. 1,806,109 for "Amplification of Electrical Currents", issued May 19, 1931. Claim 2 is in issue.[5] The specification describes " * * * a common type of circuit employing a plurality of stages of tuned radio frequency amplification." The asserted invention is for a method of controlling inter-stage regeneration or feed-back and consists in decreasing successively the grid-plate capacity of the tubes but no means are disclosed for neutralizing the regenerative capacities of the first tube. The court below found, Finding of Fact 8(b), that: "The patent is inoperative, because intra-stage oscillations, in the individual tubes, will not be prevented, and each amplifier tube will regenerate into uncontrollable oscillations. The tube circuits are not shielded from each other, either externally, or internally as by a shield grid." These findings are supported by ample evidence and demonstrate that the disclosure is inoperative.

■ It is equally obvious that RCA's accused superheterodyne receiver does not infringe claim 2. The RCA superheterodyne is of the usual type with a "tuned circuit" connected to the receiving antenna so the operator can select the desired frequency. The radio frequency comes into the converter tube, meeting the oscillator frequency, resulting in an intermediate frequency which is amplified and goes on to the detector. As to the nature of a superheterodyne receiver see Westinghouse Electric & Mfg. Co. v. Taub, D.C.S.D.N.Y.1924, 4 F.2d 605. RCA does not employ a series of radio frequency amplifying tubes functioning as disclosed by McCullough and other methods are employed by RCA to prevent regeneration in the converter and intermediate frequency tubes.

The fourth and last patent for discussion is No. 1,819,783, for "Radio Circuits Employing Alternating Current Radio Tubes", issued August 18, 1931. Claims 3 and 5 [6] are in issue. McCullough's disclosure, to quote the specifica-

---

cathode and grid electrodes within the shell carried by the ceramic supporting members, said metal envelope constituting an electrode other than an anode."

5. Claim 2 is as follows: "A system of radio frequency amplification having a plurality of amplifying stages, each of said stages having a thermionic tube, the capacity coupling between the grid and the plate in each succeeding stage being decreased toward the output end of the circuit."

6. Claim 3 is as follows: "The combination with a radio circuit for thermionic tubes, of tubes in the circuit having cathodes, looped means energized by an alternating current for heating the cathodes, an alternating current circuit multiply connected with the said heating means, one side of said alternating current circuit being grounded to one side of the radio circuit, a source of direct current connected to said radio circuit, circuit connections including a conductive path extending from a common conductor connected to said cathodes through said source of current to said grids, and means for tuning the circuits of said grids."

Claim 5 is as follows: "The combination with a radio receiving circuit utilizing a plurality of thermionic tubes connected in cascade and each having an anode, grid and cathode, a heater in each tube for the cathode adapted to be energized by alternating current to conductively heat the cathode to render the same active, a common connection for the grids of the several tubes, a common connection for the cathodes of the several tubes, a battery in series between the common grid connection and the common cathode connection,

tion, "relates to a method of and a circuit for using radio tubes of the type having a cathode and a heater for the cathode", referring to tubes constructed in accordance with a copending application filed by McCullough. Such tubes are shown in Figure 2 of the patent under discussion.

The specification goes on to state: "While a tube as constructed in accordance with my said invention effectively eliminates inductance effects of alternating pulsating currents in the tube itself, it is desirable, when using the tube in a set, to eliminate any reaction or capacity effects between the alternating or pulsating heater circuit and the tube circuit per se.

"The present invention has for its object to provide a simple and convenient way of avoiding such reactions or effects.

"Furthermore, in a tube of this type, there is only one cathode connection in the base, whereas, the usual tube having the direct heated cathode or filament has two cathode connections in its base, which cathode connections, make circuit with the filament heating or 'A' battery, and whereas this A battery is not required with my tube, it will be seen that there is an open circuit across the usual A battery terminals of the receiving circuit.

"According to a further object of the present invention, I propose to utilize present circuits in standard sets, or circuits in apparatus built specially for use with my tubes, by using the same circuit now employed and grounding the cathode of the tube to the common ground of the circuit through a small battery connected across what corresponds to the A battery circuit of present sets, so that the cathode of each tube in the circuit will have a potential opposite the potential on the grid. In other words, an object of the present invention is to so utilize a circuit that a bias or C battery is substituted across the ter-

minals of what has heretofore been the A battery circuit, to bias the grid and avoid opening the circuit of each tube for a C battery connection."

In a concluding explanation of the purpose of the disclosure the specification states: "It will * * * be seen that I have devised a novel method of and apparatus for adapting alternating current tubes to present standard types of sets or circuits, or adaptable to circuits especially designed for my tubes, without any departure from present practice."

Counsel arguing in support of the patent assert in their brief that the claims in issue "define a circuit requiring two conditions in combination—the first in connecting one side of the heater circuit into the radio circuit and connecting the several grids of the A-C tubes through a C battery or current source to the cathodes with the cathodes being grounded, thus also grounding the heater circuit." This statement is substantially correct.

■ Figure 2 shows and the specification describes an indirectly heated cathode tube. McCullough desired to sell such tubes for general use in broadcast receivers. The patent discloses that a slight change in the set-up of the circuit of the ordinary broadcast receiver would permit the use of McCullough's tubes. No patentable invention is disclosed. The Anderson Patent No. 2,086,595, filed nearly a year before the application for this patent, substantially anticipated the McCullough claims. Even if this were not so, only mechanical ingenuity was demonstrated.

■■ The issue of infringement may be disposed of briefly. Without referring to certain conventional techniques obviously not first disclosed when described in this patent it is sufficient to say here that RCA receivers do not use a C battery and that the grids of the RCA tubes are not biased by the means disclosed in the patent. RCA uses a

a circuit extending from said common grid connection to one side of the source of alternating current and including said

battery, and means for resonating the grid circuits of said tubes."

special rectifier built into the tube. We cannot treat this as an equivalent. Concerning the means for tuning, the patent refers only to "two stages of tuned radio-frequency amplification", whereas the RCA receivers have only one grid circuit which is tuned. In light of the art as it existed in 1925 the claims of this patent are not entitled to a broad interpretation.

The judgment of the court below will be affirmed.